## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ERIN GALFER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHICAGO BOARD OF EDUCATION,** | ) | **JURY TRIAL DEMANDED** |
| **AND PEDRO MARTINEZ, WILL** | ) | |
| **FLETCHER AND CAMIE PRATT, AS** | ) | |
| **INDIVIDUALS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Erin Galfer ("Galfer" or "Plaintiff"), by her attorneys, The Karmel Law Firm, complains of Defendants, Chicago Board of Education ("Board"), the governing body of the Chicago Public Schools ("CPS"), and Pedro Martinez ("Martinez"), Will Fletcher ("Fletcher") and Camie Pratt ("Pratt"), in their individual capacities (collectively, "Individual Defendants"), as follows:

## INTRODUCTION

1.      While this case is about scapegoating Galfer, violating her Constitutional rights and irreparably damaging her reputation and ability to continue working in the education field, it is ultimately about the endemic failures of the Board and its agents to protect CPS students from becoming victims of sexual misconduct.

2.      For more than 20 years Galfer dedicated her life to educating children and providing them with a safe space to learn and grow, including during the time she was the Principal at the Marine Leadership Academy ("MLA").

1

3.     However, this all changed in November 2021 when, knowing that the Board's Office of the Inspector General ("OIG") was preparing a report concerning allegations of sexual misconduct at MLA by teachers and volunteers, CPS began a campaign of lies and deflection about its knowledge and culpability.

4.     CPS began by first terminating Galfer on November 5, 2021, despite having just promoted her into CPS management and, second, by falsely stating at a November 19, 2021, news conference that it had "recently" learned of the allegations of sexual misconduct at MLA.

5.     Instead of accepting responsibility for its failures to protect MLA students from incidents of sexual misconduct known since at least 2019, at the November 19 news conference Defendant Martinez blamed OIG for the delay due to "a backlog of cases" and "insufficient staffing."

6.     When the OIG report was issued later on November 19, 2021, it too falsely accused Galfer of failing to report and timely report two instances of sexual misconduct by others at MLA.

7.     The truth the Board doesn't want known is Galfer timely reported all instances of sexual misconduct known to her at MLA, while CPS and OIG failed to act on her reports for years, jeopardizing the safety of students at MLA.

8.     This campaign of deception and lies was fueled by the fear of placing at risk billions of dollars in federal money CPS receives contingent on its compliance with a September 11, 2019 settlement with the United States Department of Education ("DOE")

following an investigation into the same problems of sexual misconduct that plagued MLA, and that Galfer reported to no avail.

9. Based on an investigation by DOE's Office of Civil Rights ("OCR"), it found, among other findings, that CPS's "management, handling, and oversight of complaints of student on student and adult on student sexual harassment have been in a state of disarray, to the great detriment of the students the District is responsible for educating."

10. Despite the DOE settlement, and Galfer's timely reporting of sexual misconduct at MLA, CPS and OIG let the reports of sexual misconduct at MLA since at least 2019 go unresolved, leaving MLA students at great risk for becoming victims of more instances of sexual misconduct.

11. Galfer brings this lawsuit against the Board for unlawful conduct committed by the Board through its officers, agents, and representatives, including OIG and the Individual Defendants, for their actions arising out of and relating to Galfer's termination as an employee of CPS.

12. More specifically, the Board and the Individual Defendants violated Galfer's Constitutionally protected liberty interests by publicly (1) falsely asserting she failed to report and timely report instances of sexual misconduct occurring at MLA when she was the Principal there; (2) falsely asserting Galfer failed to ensure that a volunteer had completed a fingerprint and background check before he was allowed to engage with students at MLA; (3) falsely asserting Galfer affirmatively engaged in a cover up of instances of sexual misconduct at MLA, and by other defamatory statements; and, (4)

3

terminating her and placing a "Do Not Hire" designation on her file without providing the procedural due process required under the Fourteenth Amendment.

13. These false and stigmatizing statements under Illinois law also defamed Galfer, placed her in a false light before the public and her professional community, caused her severe emotional distress, and destroyed her ability to secure employment both within and outside of CPS, or anywhere in the educational field where she has spent her career.

14. The false statements were publicly disclosed at a news conference on November 19, 2021, by Martinez, the Chief Executive Officer of CPS, and by Camie Pratt, the Chief Title IX Officer of CPS. The news conference was attended by members of the news media, and others. Publicly discussing the OIG report, and identifying Galfer as a subject, was willful and wanton.

15. Thereafter, the false statements Martinez and Pratt made about Galfer were reported by news media outlets in and around Chicago, and by national news media outlets, and were the subject of commentary on social media.

16. In addition to the public statements made about Galfer at the November 19, 2021 news conference, on the same day OIG issued a public report detailing and concerning sexual misconduct at MLA.

17. Among other findings, the OIG report identified Galfer as "Subject F, the MLA Principal," and falsely accused Galfer of not reporting, and not timely reporting, incidents of sexual misconduct at MLA.

4

18. Thereafter, OIG issued a second public report on December 23, 2021, which, among other findings, falsely accused Galfer of failing to ensure that a volunteer at MLA had completed a fingerprint and background check before being allowed to interact with MLA students.

19. As the Inspector General, Fletcher authorized the publication of the November 19 and December 23 public reports in violation of Illinois law, Board Rules, and the Resolution appointing him as Inspector General. Both public reports recklessly and willfully disregarded evidence in OIG's possession contradicting the false and defamatory statements made in the reports about Galfer, and Fletcher's conduct in publicly publishing the reports and identifying Galfer as a subject of OIG's investigation was willful and wanton.

20. OIG's findings in the public reports concerning Galfer were widely circulated to news media outlets in and around Chicago, and by national news media outlets.

21. The statements by the Board and the Individual Defendants were false as Galfer reported all incidents of sexual misconduct at MLA she was aware of, and followed the rules and regulations pertaining to volunteers, all in accordance with the policies and protocols in place at the time.

22. Moreover, Galfer was not provided any opportunity to refute or otherwise respond to the false statements made by the Individual Defendants before or after being terminated by the Board or before their statements were made to the press and published widely.

23.     Further, in her November 5, 2021 termination letter, the Board informed Galfer it assigned a "Do Not Hire" designation ("DNH") to her CPS personnel files. The DNH identifies her to prospective employers within CPS, as well as to prospective employers outside CPS, as an employee discharged for cause, and may also be available to the public through a request for Galfer's personnel records under the Illinois Freedom of Information Act [5 ILCS 140/1 et seq.] or the Illinois Personnel Records Review Act [820 ILCS 40].

24.     The termination letter further stated, "Pursuant to the Board's Volunteer Policy, you may not volunteer, either directly with CPS or through an organization, at any CPS school or CPS-affiliated event. You also may not work in a role that involves contact with CPS students."

25.     Accordingly, unless and until CPS removes the DNH from Galfer's file, Galfer is prohibited from working in any public school in Chicago, for any CPS vendor, and from volunteering at any CPS school, including at her daughters' CPS school or at any CPS affiliated extracurricular event.

26.     Whether taken together or considered separately, the DNH, false and reckless statements made by the Board and Individual Defendants, and their willful and wanton conduct in publishing the false statements, have impugned Galfer's integrity and ability to perform her profession, making her unemployable anywhere in CPS, or by vendors of CPS, as well as within the educational profession outside of CPS.

27.     As documented in reporting by the Chicago Tribune, the OCR, and the Schiff Hardin law firm as commissioned by CPS during the period of time at issue in this

case, CPS was non-compliant with federal law, failed to investigate or even document incidents of sexual misconduct, and failed to protect CPS students.

28.     In the end, and as more fully described in this Complaint, the Board's termination of Galfer and the false statements made about her by the Board and the Individual Defendants are an intentional and unlawful campaign designed to scapegoat Galfer for the Board's widespread failure to protect CPS students from sexual predators as required by the DOE settlement, and the Board's rules, policies and protocols that were in place at all relevant times.

29.     As a result of the Board's and the Individual Defendants' willful and wanton conduct, and reckless and knowingly false statements, Galfer's civil rights have been violated, and she has suffered irreparable harm and damage to her reputation and ability to obtain employment as an educator and administrator.

## JURISDICTION

30.     Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1988 for the vindication of Galfer's civil rights.

31.     Jurisdiction over Galfer's state law defamation, false light invasion of privacy, and intentional infliction of emotional distress claims are proper in this court under 28 U.S.C. § 1367.

## **VENUE**

32.     Venue is proper in this district under 28 U.S.C. §1391(b) as all the events occurred within the City of Chicago and all parties reside or maintain their place of business in the City of Chicago.

## **PARTIES**

33.     Galfer is a citizen of the State of Illinois and resides in the City of Chicago.

34.     The Board is a municipal corporation organized and regulated under the laws of the State of Illinois and maintains its primary place of business at 1 North Dearborn, Suite 950, Chicago, Illinois 60602. The Board is the governing body appointed by the Mayor of Chicago and is responsible for oversight of CPS.

35.     Martinez is, on information and belief, a citizen of the State of Illinois and resides in the City of Chicago. Since on or about September 2021, the Board has employed Martinez as the Chief Executive Officer of CPS.

36.     Fletcher is, on information and belief, a citizen of the State of Illinois and resides in the City of Chicago. Since on or about June 2020, the Board has employed Fletcher as the Inspector General.

37.     Pratt is, on information and belief, a citizen of the State of Illinois and resides in the City of Chicago.  Since on or about March 2019, the Board has employed Pratt as the Chief Title IX Officer.

## FACTS

### a. **Galfer's Reports of Sexual Misconduct at MLA.**

38.     Galfer has spent her entire professional life working in the education field as a teacher and administrator. After graduating from Indiana University with honors in 1999, she joined Teach for America for two years.  Galfer then taught high school students in CPS from 2001 to 2004, before attending Harvard's School of Education from 2004-2005, where she earned an M.Ed. degree.  Galfer then began serving as a principal in the Chicago Public Schools, also earning an M.Ed. degree from National Louis University.

39.     Galfer became the Principal of MLA in 2015 and was promoted to an Independent School Principal at MLA in 2017.

40.     Galfer reported all incidents of sexual misconduct at MLA she was aware of, and in accordance with the policies and protocols in place at the time.

41.     More specifically, Galfer timely reported incidents of sexual misconduct made known to her to the Department of Children and Family Services ("DCFS"), OIG, the CPS Legal Department, the CPS Office of Student Protections and Title IX ("OSP"), the CPS Equal Opportunity Compliance Office ("EOCO"), to the then Executive Director of Principal Quality, as well as to others within CPS management, and on Verify and Aspen, CPS' incident reporting platforms, all in accordance with the policies and protocols in place at the time.

42.     Notwithstanding the false statements made by Martinez, Pratt and in the OIG reports, Galfer timely reported all incidents known to her of sexual misconduct occurring at MLA.

**b.   Galfer is Promoted and Then Terminated.**

43.     In the summer of 2020, Galfer applied for the position within CPS of the Deputy Chief of the Office of College and Career Success ("OCCS"). OCCS promotes social and economic mobility among CPS students to increase the number of CPS graduates who earn postsecondary credentials and enter into fulfilling and family-sustaining careers.

44.     Galfer was offered the OCCS position, which she began on July 5, 2021. After seven weeks as the Deputy Chief of OCCS, Galfer was promoted to Acting Chief of OCCS on August 31, 2021.

45.     Galfer performed her duties at OCCS without any complaints or discipline.

46.     Nonetheless, on November 2, 2021, Galfer was called to a meeting with Dr. Maurice Swinney ("Swinney"), CPS Interim Chief Education Officer, and Lauren Clair-McClellan ("Clair-McClellan"), CPS Acting Chief of Human Resource. Swinney asked Galfer to resign or "face other issues" based on a forthcoming OIG report that had not yet been finalized or released. Neither Swinney nor Clair-McClellan provided Galfer with any specific reason for the demand she resign after nearly 20 years of service with CPS, or what the "other issues" were.

47.     Galfer refused the demand to resign.

10

48.     Thereafter, on November 5, 2021, Galfer met with Mary Ernesti ("Ernesti"), Executive Director of Employee Engagement for CPS, and Clair-McClellan. At the meeting, Ernesti informed Galfer she was being terminated and the Board would be sending her termination paperwork. Neither Ernesti nor Clair-McCellan provided any facts or a reason for Galfer's discharge.

49.     On November 5, 2021, Galfer received her termination letter, notifying that her termination was effective November 6, 2021. Galfer's termination letter stated in part:

> The CPS Inspector General has informed the District that his office has identified serious concerns about systemic failures by former Marine Leadership Academy (MLA) administrators, including you, "to properly report, respond, and take further action to prevent sexual misconduct, to remedy a toxic and unsafe school environment, and to properly train MLA employees and military personnel to report such allegations." With respect to other current and former MLA staff who were under your supervision, his office also raised concerns regarding allegations of significant misconduct against students at the high school. While you no longer work at MLA, your current position as a Deputy Chief is an at-will leadership role where the Chief Executive Officer must have trust and confidence in you.

50.     By Resolution, the board authorized that, "Decisions regarding discipline, including termination, shall remain solely under the purview of the Chief Executive Officer of the Chicago Public Schools ("CEO") and the Board."

51.     Significantly, before terminating Galfer, the Board and Martinez did not provide Galfer with any facts, including information describing the "serious concerns" identified by OIG concerning her discharge, did not allow her an opportunity to rebut any witness allegations, and did not provide any notice and hearing to rebut the allegations relied upon to terminate her.

52.     To date, the Board and Martinez failed to provide Galfer with any pre-deprivation or post-deprivation hearings before or after making the false statements and terminating her on November 5, 2021.

### c. <u>The November 19, 2021, News Conference and False Statements Made About or Referring to Galfer.</u>

53.     On November 19, 2021, CPS held a news conference attended by reporters from Chicago area news organizations, as well as many other persons.

54.     From November 19, 2021, and for many days thereafter, reports from the news conference were widely published by Chicago and national news organizations in print newspapers, online news stories, on television, and on the radio.

55.     The primary speaker for CPS at the news conference was Martinez. He appeared to speak from a prepared statement and answered questions from reporters. Pratt also spoke and answered questions.

56.     In the news conference, Martinez referred to a public report of sexual misconduct and discussed and identified Galfer by name.

57.     Martinez stated an investigation had uncovered inappropriate relationships at MLA involving 12 MLA employees and a volunteer that were "tolerated or even covered up." This statement is false as it refers to Galfer and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal. With respect to those identified in the investigation, Martinez stated, "We are requesting to pull their licenses."

58. Martinez stated, "The former principal of the school, Erin Galfer, was one of the employees determined to have failed to report misconduct and has since been fired." This statement is false and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal.

59. He also stated, "she [Galfer] was in a central office position, that happened over the summer before I started, as soon as I knew that she was involved in this, she was dismissed and terminated, and that just happened just recently."

60. Martinez stated, "The behavior uncovered by this investigation represents a stunning betrayal of trust and colossal failure of judgment and character on the part of too many individuals." This statement is false as it refers to Galfer and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal.

61. With regard to the employees being investigated at MLA, Martinez stated, "Why am I still paying these individuals? Why haven't these individuals been arrested? Why haven't the individuals even that I started terminating immediately even when I could, why couldn't I get them arrested?" These statements are false as they refer to Galfer and impute she committed a crime.

62. Martinez stated, "Six of the people accused in the probe failed to report" and "actively hid suspected violations." These statements are false as they refer to Galfer and impute she committed a crime.

63. Martinez stated, "We have a sworn duty to protect children in our care, to act with integrity. So, to uncover a culture among several Marine staff, this flies in the face

of these values and is extremely disappointing, to put it mildly." This statement is false as it refers to Galfer and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal.

64.     On a personal note Martinez stated, "I'm as frustrated as you are, I'm angry as a father myself with an 11 year old, including a 7 year old daughter, I'm just as frustrated but again we have to tackle these laws because these laws, obviously these individuals knew the laws, that's why they thought it was okay."

65.     Martinez's statements were made with a reckless disregard for the truth, as he knew or should have known the statements made at the news conference about or referring to Galfer were false, and his conduct in making these statements and publicly identifying Galfer as a subject of the OIG investigation was willful and wanton.

66.     These false statements by Martinez were widely reported by many news outlets.

67.     By way of example only, NBC Chicago reported, "Erin Galfer, the former principal at Marine Leadership Academy, was promoted to a position at the CPS Central Office in June, but was recently fired for her involvement."

68.     By way of example only, the Chicago Sun-Times reported, "Yet despite the ongoing investigation, the former principal of the Logan Square school, Erin Galfer, was promoted to a district administrator position this June. She had been accused of failing to report misconduct, allegations that were eventually substantiated, and has since been fired, Martinez said."

14

69.     By way of example only, the Associated Press reported in a story republished by newspapers across the country, including the Houston Chronicle, the Stamford Advocate, and the San Francisco Chronicle, "The former principal of the school, Erin Galfer, was one of the employees determined to have failed to report misconduct and has since been fired, Martinez said."

70.     At the November 19 news conference, in response to a reporter's question about the delay in terminating Galfer and others, Pratt stated, the District "wasn't made aware from the Inspector General's office until just recently on October 20th the nature of all the allegations and so we weren't aware until then and that's when we took action." This statement is false as it refers to Galfer and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal.

71.     Martinez's and Pratt's false statements at the news conference that identified or referred to Galfer were in reckless disregard for the truth, and their conduct publicly referring to the OIG report and identifying Galfer as a subject of the report was willful and wanton, outside the scope of their authority, in bad faith, and contrary to law.

72.     As a result of the false statements by Martinez and Pratt, Galfer has been defamed, put in a false light, lost employment opportunities, suffered severe emotional distress and irreparable harm to her reputation, and sustained other damages.

### d.  **OIG Issues False Public Reports.**

73.     On behalf of the Board, OIG conducts investigations of sexual misconduct at CPS through its Sexual Allegations Unit.

74.     On or about June 24, 2020, Fletcher was appointed the Inspector General of the Board by Mayor Lightfoot.

75.     The appointment was pursuant to Section 34-13.1 of the Illinois School Code, 105 ILCS 5 et seq. ("Code") and to a Board Resolution, "Resolution Regarding Inspector General Selvyn William Fletcher" ("Resolution").

76.     The duties and powers of the Inspector General are set forth in the Code, the Resolution and Board Rule Section 3-8 ("Rule").

77.     Section 34-13.1(e) of the Code authorizes that the Inspector General shall, among other duties, "provide to the board and the Illinois General Assembly a summary of reports and investigations made under this Section. . . ." The Code further provides, the "summaries shall detail the final disposition of those recommendations . . ." and "shall not contain any confidential or identifying information concerning the subjects of the reports and investigations."

78.     The Resolution further empowered Fletcher "to investigate reports of sexual misconduct by employees, vendors, or volunteers where a CPS student may be the victim."

79.     The Resolution provides guidelines for sexual misconduct investigations conducted by the Inspector General including:

> "(a)  The Inspector General Shall report to the Board on a monthly basis, including the number of reports received, the number of claims under investigation, the employees and schools involved, the nature or the allegations, and the status of any person subject of an investigation."

80.     In addition, Board Rule Section 3-8 concerns the duties of the Inspector General for "investigations into employee misconduct." The Rule provides, the Inspector General "shall report on or make recommendations to the Board about investigations completed by the Office of the Inspector General."

81.     Nothing in the Code, Resolution or Rule authorize or permit the Inspector General to issue public reports or summaries of its investigations, or publicly identify any person subject of an investigation.

82.     Later in the day after the November 19 press conference, OIG issued a public report titled, "Public Summary of Investigation Marine Leadership Academy." This report publicly identified Galfer as "Subject F, the MLA Principal," and falsely accused Galfer of failing to report, and failing to timely report, incidents of sexual misconduct at MLA. This report remains available to the public on OIG's website.

83.     More specifically, under the heading, "FAILURE TO REPORT SEXUAL ABUSE/INAPPROPRIATE INTERACTIONS WITH STUDENTS," the OIG report falsely states the following with regard to Galfer:

> Subject F and G [Security Officer] failed to report allegations of sexual intercourse between Subject B [MLA Teacher] and a former student.
>
> a.  At the start of the 2018-19 school year, Subject G reported to Subject F that he had a conversation with the MLA graduate who had been previously investigated for having sex with Subject B. The MLA graduate told Subject G that he (the graduate) actually did have sex with Subject B. The MLA graduate was 18 at the time of the prohibited conduct.
>
> b.  Subject F failed to report this information for more than six months, and only did so after 15 minutes after a DCFS investigator made an unannounced visit to MLA to investigate other allegations of sexual misconduct.

84. Notwithstanding the above false statements referring to Galfer, the OIG report acknowledged Subject G lied to OIG. Regarding this, the OIG report states:

> Subject G additionally lied to the OIG in his second interview in which he recanted his original statements to the OIG that the MLA graduate disclosed sexual interactions with Subject B and that he told Subject F about the MLA graduate's disclosure.

85. Nevertheless, the OIG report knowingly relied on Subject G's recanted statement to assert Galfer failed to timely report sexual misconduct and published its report on November 19.

86. The above statements from the report are false as they refer to Galfer and impute an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal.

87. Under the same heading, in paragraph A1, the OIG report also stated Galfer failed to report a sexual or inappropriate relationship between a different teacher and a student. This statement is false as it refers to Galfer and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal.

88. These false statements in the November 19 OIG report were widely reported by many news outlets.

89. By way of example only, on November 22, 2021, the Chicago Sun-Times reported, "Galfer and a security guard were taken to task for knowing about the sexual relationships between the teachers and the students but not reporting them, according to the report. In one case, Galfer only reported the abuse 15 minutes after a child welfare investigator visited the school, the IG said."

90.     By way of example only, Chalkbeat Chicago reported, "Six other staffers failed to report and actively hid suspected violations including the principal, the assistant principal, head of security, a counselor, and a teacher's assistant. They were alleged to have known about the abuses but failed to report, according to the OIG."

91.     On December 23, 2021, OIG issued a second public report from its investigation of MLA titled, "Public Summary of Investigation Conclusion Marine Leadership Academy." This report again defamed and impugned Galfer. The second report publicly identified Galfer as a subject of an OIG investigation and was published to news media outlets and republished to the public. The second report stated, "The Principal (Subject F) violated the CPS Volunteer Policy by failing to ensure that Subject K [a volunteer] had completed a fingerprinting and background check before he was allowed to engage with students at MLA." This statement is false as it refers to Galfer and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal. This report remains available to the public on OIG's website.

92.     Regarding the alleged failure to ensure that Subject K completed a fingerprinting and background check of a MLA volunteer, CPS previously investigated this claim and found Galfer believed the volunteer was "properly cleared to be in the building for the 2019-2020 school year." As a result, CPS determined on June 15, 2020 no disciplinary action would be taken against Galfer.

93.     OIG also stated in the second public report, "The failures to report went to the highest levels at MLA, as Subject F failed to report several instances of prohibited conduct between CPS-affiliated adults at the school and students. Subject F also

contributed to a dysfunctional and divisive environment, which played a role in whether MLA staff members reported violations of CPS policies at all and how the reporting was handled (or mishandled)." This statement is false as it refers to Galfer and imputes an inability to perform or want of integrity in the discharge of Galfer's duties as MLA Principal.

94.     These false statements in the December 23 OIG report were widely reported by many news outlets.

95.     By way of example only, Chalkbeat Chicago reported, "The office of William Fletcher, the Chicago Public Schools inspector general, on Thursday released its second summary report publicly detailing more instances of sexual misconduct, inappropriate behavior between a volunteer and students, and failures by the principal to safeguard students at the public military academy and college-prep high school."

96.     Fletcher approved publication of these public reports, even though Fletcher knew or should have known the statements regarding Galfer were false.

97.     The publication of the November 19 and December 23 reports to the public were in violation of Fletcher's grants of authority as Inspector General pursuant to the Code, Resolution and Rule, and outside the scope of his authority, in bad faith, and contrary to law.

98.     The publication of November 19 and December 23 public reports violated the Code because they identified Galfer as a subject of an investigation.

99.     Fletcher's conduct in authorizing the false statements contained in the November 19 and December 23 reports was willful and wanton.

100.     As a result of the false statements in the reports, made and authorized by Fletcher, Galfer has been defamed, put in a false light, lost employment opportunities, suffered severe emotional distress, irreparable harm to her reputation, and sustained other damages.

**Count I**
**42 U.S.C. § 1983 – Due Process—Liberty Interest**
**All Defendants**

101.     Galfer hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

102.     The Fourteenth Amendment to the United States Constitution prohibits deprivations of an individual's life, liberty, or property without due process of law.

103.     The Fourteenth Amendment is enforceable under 42 U.S.C. § 1983.

104.     The Board and Individual Defendants impugned Galfer's character by asserting to the public that Galfer was terminated for failing to report and timely report, actively covering up serious acts of sexual misconduct by MLA staff and volunteers, committing a crime, failing to properly vet a volunteer at MLA, and by placing a DNH on her personnel file.

105.     Galfer was terminated without providing her a pre-termination or post-termination hearing.  As a result, the Board and Martinez deprived Galfer of her liberty without due process by denying her the opportunity to rebut these allegations.

106.     The Board's and Individual Defendants' statements that Galfer failed to properly report acts of sexual misconduct, failed to properly vet a volunteer at MLA, engaged in a cover up and a crime, and designated Galfer as DNH on her personnel records, stigmatized Galfer by permanently identifying her as an employee who was fired for cause due to serious and possible criminal misconduct.

107.     The Board and Individual Defendants publicly disclosed this stigmatizing information by publicly communicating the details of OIG's investigation of Galfer to members of the press at the November 19, 2021 news conference, and in the November 19 and December 23, OIG reports.

108.     By designating Galfer as DNH and publicly disclosing she was fired for failing to report acts of sexual misconduct and other defamatory statements alleged herein, Galfer is not only unable to obtain employment anywhere in CPS, or with any vendors who have contact with CPS students, or in its charter contract schools, but she is also functionally blacklisted in the educational profession. This has made it impossible for Galfer to obtain employment anywhere in the education field, or to even pass an educational employment background check.

109.     Indeed, prior to the Board's and Individual Defendants' statements to the press, and the release of the first OIG report, multiple educational institutions had expressed interest in hiring Galfer. However, following reports of the statements made on November 19, 2021 by the Board and Individual Defendants, all of the prospective employers withdrew their interest in, or otherwise rejected Galfer, and she has not since been able to find employment in the field of education.

110.    The termination of Galfer without notice or hearing was in violation of the Due Process Clause of the Fourteenth Amendment.

111.    The actions of the Board and Individual Defendants were intentional, willful and malicious, and in deliberate indifference for Galfer's rights as secured under 42 U.S.C. § 1983.

112.    As a result of the Board's and Individual Defendants' unlawful actions, Galfer has suffered and continues to suffer great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages, and is entitled to punitive damages, to the extent available.

**<u>Count II</u>**
**<u>Defamation Per Se and Defamation Per Quod</u>**
**<u>Individual Defendants</u>**

113.    Galfer hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

114.    The Individual Defendants at the November 19, 2021 news conference, and through OIG's publicly published reports, made numerous false and unprivileged defamatory statements about Galfer, which were republished widely by the news media both locally and across the country.

115.    The false statements made by the Individual Defendants impugned Galfer's integrity, suggested she had engaged in severe and even criminal misconduct, lowered her in the eyes of the community, and characterized her as unfit to perform her duties as a

school principal and to work in the educational field generally. These statements are per se defamatory under Illinois law.

116.    The Individual Defendants knew the statements they made regarding Galfer were false, or acted in reckless disregard to whether the statements were false, and their conduct was willful and wanton.

117.    As a result of the Individual Defendants' false and defamatory statements, Galfer has suffered damages, including the loss of her reputation, emotional distress, the loss of economic opportunities in her chosen field and profession, ongoing financial harm, and is entitled to punitive damages.

**Count III**
**False Light Invasion of Privacy**
**Individual Defendants**

118.    Galfer hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

119.    As set forth above, the Individual Defendants' false and defamatory statements, widely reported in the local and national press, placed Galfer in a false light before the public.

120.    The false light the Individual Defendants cast onto Galfer is highly offensive to her, and is highly offensive to a reasonable person as it impugns her character, her ability to perform her profession, states she failed to follow applicable laws and rules, and states she placed CPS students in harm's way from sexual misconduct, and actively covered up misconduct which Individual Defendants claimed was repugnant, a betrayal of trust, and even criminal.

121.    The Individual Defendants acted with actual malice since they knew or acted in reckless disregard for the truth or falsity of the statements, and their conduct was willful and wanton.

122.    As a result of the Individual Defendants' false and defamatory statements, Galfer has suffered damages, including the loss of her reputation, emotional distress, the loss of economic opportunities in her chosen field and profession, ongoing financial harm, and is entitled to punitive damages.

**<u>Count IV</u>**
**<u>Intentional Infliction of Emotional Distress</u>**
**<u>Individual Defendants</u>**

123.    Galfer hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

124.    The Individual Defendants engaged in extreme and outrageous conduct by publicly reporting and publishing false statements about Galfer.

125.    The Individual Defendants either intended to inflict severe emotional distress on Galfer, or knew there was a high probability their statements would cause Galfer severe emotional distress, and their conduct was willful and wanton.

126.    As a result of the Individual Defendants' conduct, Galfer has suffered severe emotional distress.

**<u>JURY TRIAL DEMANDED ON ALL ISSUES</u>**

127.    The Plaintiff respectfully requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Erin Galfer, respectfully requests relief against Defendants, Chicago Board of Education and the Individual Defendants as follows:

a.  Declaratory and injunctive relief, including but not limited to reinstatement;

b.  Compensatory damages, including but not limited to lost wages and earning opportunities, front pay, mental and emotional damages;

c.  Punitive damages;

d.  Attorneys' fees and costs;

e.  All other relief this Court deems just.

Respectfully submitted,

/s/ Jonathan D. Karmel
Attorney for Erin Galfer

/s/ Joseph Torres
Attorney for Erin Galfer

Karmel Law Firm
20 S. Clark Street
Suite 1720
Chicago, Illinois 60603
Phone:  312-641-2910
Fax:  312-641-0781
jon@karmellawfirm.com
joe@karmellawfirm.com